

U.S. DISTRICT COURT
FILED
SEP 23 2014
WP
S.D. OF N.Y.

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS DIVISION

# 14 CIV. 7692

eScholar, a New York
Limited Liability Company,

      Plaintiff

**v.**

Edgenuity, Inc.,
Weld North LLP,

      Defendants

_____/

14 CV

**JUDGE SEIBEL**

**COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiff, eScholar LLC, ("Plaintiff" or "eScholar") for its complaint against defendants Edgenuity, Inc. and Weld North Holdings, LLC (hereinafter, referred to as "Edgenuity", "Weld North, or collectively "Defendants", as the case may be), by and through its undersigned counsel, states and alleges as follows:

### PRELIMINARY STATEMENT

1.    This is a case of trademark infringement and wrongful breach of an Agreement for the Exchange of Confidential Information" ("NDA") initiated by a nationally recognized education data management company against Defendants for willful and unauthorized use and infringement on its "eScholar myTrack ®" business-to-consumer software product protected trademark, and breach of an NDA by Defendants where proprietary confidential information,

trade secrets and know-how associated with the Company's product were blatantly misappropriated by Defendants in connection with Edgenuity's development and commercialization of the "Edgenuity MyPath" unregistered trademark product.

As averred herein, eScholar's award winning suite of software products are the recognized standard in student and staff identification, education data warehousing, and personalized goal management solutions in the education marketplace. The eScholar myTrack ® product is a web-based, comprehensive solution that leverages education data to personalize education for every student. The eScholar myTrack ® approach to student-centric education is highly unique in its ability to present each audience with individualized and holistic views that span across an entire education lifecycle. Users of the eScholar myTrack ® product can set goals for all their students based on their data needs whether its reading, math, science or any other educational discipline and associated student goal taking the next step from personalized insight to action.

The eScholar myTrack ® product is the first consumer driven data application developed and commercialized by the Company, and eScholar believes that this consumer product is not only entirely unique but will serve as the Company's lead revenue generator and growth engine for the Company in the near future and beyond.

Thus, as averred in this action, Defendants' past and continuing infringement on this highly proprietary software product, and misappropriation of highly sensitive proprietary confidential information in direct violation of the NDA, and improperly used by Edgenuity in connection with the development and commercialization of its "MyPath" product should not be countenanced by the Court and should be permanently enjoined, as a matter of law.

2

## PARTIES

2.      Plaintiff eScholar is a New York limited liability company with it principal offices located at 222 Bloomingdale Road, Suite 107 White Plains New York 10605.

3.      Defendant Weld North is located at 140 Greenwich Avenue, Third Floor, Greenwich Connecticut 06830.

4.      Defendant Edgenuity is located 915 Broadway, Suite 1406 New York, NY 10010.


## JURISDICTION AND VENUE

5.      This is a complaint ("Complaint") for violations of §§ 32 and 43 of the Lanham Act, 15 U.S.C. § 1114 (1) (Trademark Infringement), 15 U.S.C. § 1125(A) (Unfair Competition and False Designation of Origin), breach of contract under New York Law and for deceptive trade practices under N.Y. Gen. Bus. Law § 349.

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 since this action presents questions under federal law pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et. seq.* The amount in controversy exceeds $75,000. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over Defendants because the Defendants conduct business in New York State and maintain business offices in New York City. Also, Defendants have purposefully availed themselves to the activities in this forum, and this Complaint arises out of those activities namely the publication and dissemination of an infringing trademark and breach of contract in New York causing ongoing injury to Plaintiff.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(c), because a substantial

part of the events giving rise to the claims occurred, and continue to occur in the Southern

District of New York. The damage to Plaintiff herein has and continues to take place in the

Southern District of New York and elsewhere.

## RELEVANT FACTS

9.      By way of background, the Company has traditionally focused over the years on its

"eScholar Complete Data Warehouse ®" described in trademark registration filing no. 3363282,

filed on July 15, 2005, as "Computer software for automation of data warehousing in conjunction

with unique identification systems for the education market, namely, schools, school districts,

staff and students." See Shawn Bay Affidavit at para. 2 ("Bay Aff. at para. ___")

10.     eScholar owns numerous registered trademarks, including a registered trademark for

"eScholar myTrack ®" described in trademark registration filing no. 4,215,239, filed on August

9, 2011, as "computer software application which provides a workflow for setting and managing

goals, analyzing results, and accessing data for benchmarking, and allows students, educators,

administrators, and parents to build and create pathways to success for education, personal and

career goals." A copy of the trademark registration is attached to the Bay Aff. as **Exhibit A**. Bay

Aff at para. 3.

11.     eScholar is the market leader in education data management. Today, the Company's

award-winning products have become the recognized standard in student and staff identification,

education data warehousing, and personalized goal management solutions in the education

marketplace. Bay Aff at para. 4.

12.     The Company's suite of educational data driven management products is currently relied on by over 13 state education agencies across the United States (significantly, in influential states such as New York and Texas for example), school districts, the U.S. Department of Education, and the U.S. Department of Defense Education Activity. Bay Aff at para. 5.

13.     The records of more than 20 million of the nation's K-12 and Postsecondary students are managed through the eScholar products and services.  Bay Aff at para. 6.

*a. The eScholar myTrack ® Software product*

14.     The eScholar myTrack ® product is a web-based, comprehensive solution that leverages education data to personalize education for every student. The eScholar myTrack ® approach to student-centric education is highly unique in its ability to present each audience with individualized and holistic views that span across an entire education lifecycle. Users of the eScholar myTrack ® product can set goals for all their students based on their data needs whether it's reading, math, science or any other educational discipline and associated student goal taking the next step from personalized insight to action. Bay Aff at para. 7.

15.     The eScholar myTrack ® product is the first consumer driven data application developed and commercialized by the Company, and eScholar believes that this consumer product is not only entirely unique but will serve as the Company's lead revenue generator and growth engine for the Company in the near future and beyond. Bay Aff at para. 8.

16.     The Company has been using this mark in commerce since 2011, and given the longstanding and commercial use of the eScholar myTrack ® software product this mark has

5

become exclusively associated with the Company and its suite of software products. Bay Aff at para. 9.

17.     The eScholar myTrack ® mark is a "distinctive" and "fanciful" mark in the educational sector and is indelibly associated with the Company's award winning and well recognized products and services. The eScholar myTrack ® mark is a made up term that originated in 2011. Bay Aff at para. 10.

18.     As discussed below, what intrigued defendant Weld North, a Connecticut-based private equity firm focused on investments in the education sector was the eScholar myTrack ® product since Weld North viewed this software product as the growth engine for the Company. Weld North acknowledged the software products uniqueness and robust business to consumer play that properly financed and marketed could lead to substantial hyper revenue growth for the Company. Bay Aff at para. 11.

19.     Since the Company commenced using the eScholar myTrack ® mark in the United States commerce, the Company has expended substantial sums of money developing, advertising and promoting the product and mark, and has built the eScholar myTrack ® mark into a well-known name in the educational marketplace. Bay Aff at para. 12.

20.     Critically, the Company views this unique product and associated mark as the "crown-jewel" of its product suite that will drive the Company to new and substantially greater Company valuations in the short and long term. Bay Aff at para. 13.

6

*b. Weld North's and Edgenuity's Wrongful Violation of the NDA.*

21.     As discussed herein, Weld North is a prominent private equity firm that invests almost

exclusively in the education sector. It was Shawn Bay's understanding at the outset of his

discussions with Weld North that what interested the private equity firm the most was the

eScholar myTrack ® product given its consumer-centric demographic. Weld North viewed this

as the growth engine for the Company, and thus focused most of it discussions with the

Company on the product and execution strategies the Company envisioned in capturing

substantial market share. Bay Aff at para. 14.

22.     Following the Company's introduction to Weld North on January 29, 2013, the parties

executed an "Agreement for Exchange of Confidential Information" ("NDA") issued by the

Company on January 31, 2013 prior to engaging in any further detailed discussions that would

entail the disclosure of the Company's confidential information, trade secrets and know-how

associated with its products and services. A copy of the NDA is attached to the Bay Aff. as

**Exhibit B**. Bay Aff at para. 15.

23.     From the outset, Weld North immediately took a keen interest in eScholar myTrack ®

software product since, according to Weld North, this product fit nicely with its investment

charter, and would be complimentary to other of its portfolio education assets including, as

discussed herein, Edgenuity, a portfolio company of Weld North. Bay Aff at para. 16.

24.     According to Weld North's website "Edgenuity combines the stability of an established

company with the fast-paced, nimble culture of a startup." Edgenuity goes on to state that, "Our

award-winning curriculum has helped more than one million students succeed, and we're proud

to partner with schools in all 50 states to improve the quality and equity of education. But we don't stop there. We're always seeking ways to enhance and grow our offering." Bay Aff at para. 17.

25.      According to the Edgenuity website, "Edgenuity MyPath is a new supplemental program that offers online, data-driven differentiated instruction for mathematics and reading. Edgenuity's MyPath is designed to meet middle school and high school students at their learning level and give them exactly what they need to catch up, keep up, and get ahead." Bay Aff at para. 18.

26.      Like the eScholar myTrack ® product, Edgenuity MyPath is a web-based consumer product that is targeted to students with the goal of assisting them improve in scholastic performance and reach their desired goals in education. Bay Aff at para. 19.

27.      The Edgenuity MyPath product was introduced to the education market place shortly following, as discussed herein, a critical meeting that Weld North arranged with the key representatives of Edgenuity, Weld North, Shawn Bay and Elissa Seto, the Product Marketing Manager at the Company that, as discussed below, was held on April 2, 2013 at Edgenuity's offices in New York City (the "April 2, 2013 Meeting'). Bay Aff at para. 20.

28.      As discussed herein, Weld North representatives were very clear that the April 2, 2013 Meeting with its portfolio asset, Edgenuity, was all about exploring in detail how the respective product offerings were complimentary and synergistic; specifically, the fact that Edgenuity's products (at that time) were focused on curriculum (and eScholar was not), and eScholar myTrack ® product focus was on data driven educational applications, an area of focus that Edgenuity lacked. Bay Aff. at para. 20.

8

29.     Specifically, Weld North's Chief Executive Officer, Jonathan Grayer, was very clear in his positioning of the April 2, 2013 Meeting; that was to engage in a deep discussion of the synergies between Edgenuity curriculum and content products which deliver support or deliver instruction with the eScholar myTrack ® product that collect, analyze and deliver data. The Edgenuity "MyPath" product was never mentioned at that time in 2013 but only the curriculum products that Edgenuity offered in 2013. Significantly, up until the release of Edgenuity's "MyPath" product the Company had not seen instances in the marketplace where Edgenuity offered products that compete with eScholar myTrack ® . Bay Aff. para. 21.

30.     Simply put, the April 2, 2013 Meeting was singular in purpose; namely to have Shawn Bay and Elissa Seto present in detail the eScholar myTrack ® product through a presentation that included detailed disclosure of proprietary Company confidential information, trade secrets and know-how. Bay Aff at para. 21.

31.     At the time, Shawn Bay and the Company believed that the Company was protected from any piracy and/or infringement since, among other things, an NDA was in place in the first instance with Weld North that by extension would cover its portfolio assets. The Company believed Weld North, a well-heeled private equity firm, would never contemplate the unauthorized use and commercial exploitation of the Company's confidential information to the sheer detriment and damage to eScholar and advantage to its portfolio asset, Edgenuity. Suffice it to say, the Company believed an "inherent trust" existed between the parties that would never be violated. Bay Aff at para. 23.

9

32.     As described herein the Company was wrong in that believe. Initially, the relationship got off to a good start. As stated earlier, following a brief introductory telephone conference, the parties collectively decided to move forward into some preliminary due diligence associated with a potential equity investment by Weld North into the Company. Bay Aff at para. 24.

33.     Specifically, on February 12, 2013 Weld North representative, Justin Kulla, arranged a telephone conference call with eScholar scheduled to take place on February 20, 2013 to discuss possible investment into the Company. The telephone conference call on February 20, 2013 included key individuals from Weld North and Edgenuity including from Weld North Justin Kulla, Meet Doshi and Steve Berger. Sari Factor, Chief Executive Officer of Edgenuity (Sari Factor was also represented as a team member of Weld North), and Justin Serrano of Edgenuity also participated on the telephone conference call. Shawn Bay along with Wolf Boehme, a senior manager and Chief Operating Officer of eScholar participated on the call. Bay Aff at para. 25.

34.     During the February 20, 2013 telephone conference call the Company presented a detailed overview of its business including the eScholar myTrack ® product to the Weld North and Edgenuity teams. Following the meeting, Weld North; specifically Justin Kulla asked that the parties have a face-to face meeting at the Weld North offices in Greenwich, Connecticut on March 27, 2013. Bay Aff at para. 26.

35.     Wolf Boehme and Shawn Bay met with Jonathan Grayer, Chief Executive Officer of Weld North, Steve Berger, Justin Kulla and Meet Doshi. The meeting was scheduled by Jonathan Grayer's assistant, Bonnie Peidmont. Bay Aff at para. 27.

36.     At that meeting the Company discussed in more detail its various products and services. Critically, Jonathan Grayer appeared totally focused on the eScholar myTrack ® product and to that end suggested that we all arrange for a subsequent meeting to take place at the Edgenuity

10

offices in New York City for a more formal detailed presentation of the eScholar myTrack ®
product. Bay Aff at para. 28.

37.      Significantly, the purpose of the meeting at Edgenuity was to take a "deeper dive" on the
eScholar myTrack ® product, and to explore in detail ways in which the eScholar myTrack ®
product might complement Edgenuity's credit recovery and curriculum product offering. Bay
Aff at para. 29.

38.      As mentioned earlier, at the April 2, 2013 Meeting, Elissa Seto and Shawn Bay met with
the Weld North team and Sari Factor of Edgenuity. At the April 2, 2013 Meeting, Jonathan
Grayer and his Weld North team asked a number of detailed questions about eScholar's market
research that led to the development of eScholar myTrack ® including questions concerning
marketplace feedback and results, which he considered very impressive. The Weld North team
also asked very specifically about why the Company chose to incorporate goals in the
Company's product offering and they were very impressed and thought that product attribute to
be a great idea. Bay Aff. para. 30. Following the Company's in-depth presentation where critical
proprietary confidential information, trade secrets and know-how were shared with Weld North
and Edgenuity, the Weld North team asked numerous detailed questions concerning the
functionality of the eScholar myTrack ® product including exploring the demographic audience,
points of value-added and synergies between our product and Edgenuity's product offerings. Bay
Aff at para. 31.

39.      At the time of the April 2, 2013 Meeting the eScholar myTrack ® product had already
generated approximately $2,800,000 in sales revenue in just over a year following its release.
Since that time it has generated an additional $2,400,000 in sales revenue, and is currently being
licensed to more than 200 school districts. Bay Aff. para. 32.

40.     As described more fully in the affidavit of Elissa Seto critical and proprietary Company marketing, sales and distribution strategies were disclosed to Weld North and Edgenuity at the April 2, 2013 Meeting. Elissa Seto Affidavit at paras. 2,4. (Seto Aff. para. __ ).

41.     For example, Seto provided an in-depth demonstration of eScholar myTrack ® , which is password protected and not available to the public. Set Aff. para. 2.

42.     As Product Marketing Manager at the Company, Elissa Seto had spent substantial time and effort researching the support of the student-centric, goal-based unique approach of the eScholar myTrack ® product, and critically, developing the Company's marketing, sales and distribution strategies associated "eScholar myTrack®" . In particular, for the Company's upcoming New York State district sales roll-out.

43.     At the April 2, 2013 Meeting described in the affidavit of Shawn Bay, the Company engaged in a very detailed conversation with Sari Factor and other Edgenuity and Weld North senior representatives about the Company's sales and marketing approach relating to eScholar myTrack ® . Specifically, the Company discussed, among other sensitive and confidential information, how eScholar myTrack ® is a way to devise a highly personalized education plan for every individual student. Seto Aff. para. 4

44.     Elissa Seto also disclosed details associated with the Company's upcoming district sales and marketing plan in New York State as the Company was one of three approved data dashboard vendors for the EngageNY project. At that time, district selection had not yet occurred. However, the Company had already been in advanced meetings with various RICs and BOCES throughout New York State. Seto Aff. para. 5.

45.     At the April 2, 2013 Meeting, Elissa Seto disclosed and discussed in detail other highly confidential information concerning academic research that the company spent substantial

amounts of time and money working on regarding student goals, and adding relevancy to education incorporating our unique strategy with eScholar myTrack ®. Set Aff. para. 6

46.    Elissa Seto also discussed the overall development of eScholar myTrack ® from its inception and how current customers including Cumberland County Schools in North Carolina played a role in the development of eScholar myTrack ®, and the ways they our using our product at that time. Seto Aff. at para. 7.

47.    The eScholar myTrack ® product is now licensed to New York State, and about 225 districts, which encompass about 600,000 students, and selected eScholar myTrack ® as their data dashboard of choice. Seto Aff. at para. 8.

48.    Following the April 2, 2013 Meeting, Weld North, without any explanation, decided to take a pass on the investment, and soon thereafter the Company learned that Edgenuity released its "MyPath" product that, as described earlier, is a very similar product to eScholar myTrack ® product. Bay Aff at para. 33.

49.    Clearly, but for the disclosure of the Company's confidential information, trade secrets and know-how it would be hard to imagine that Edgenuity would suddenly come up with a very similar product shortly after the relationship with Weld North and Edgenuity ceased. Bay Aff at para. 34.

50.    Thus, the NDA was clearly violated by Weld North and by extension its portfolio company Edgenuity. Bay Aff at para. 35.

*d. Edgenuity's Trademark Infringement upon eScholar myTrack ® product.*

51.     In addition to the clear breach of the NDA by Weld North (and by extension Edgenuity) these organizations had the brazen audacity to take it a step further by blatantly infringing on the Company's "myTrack" protected mark. Bay Aff at para. 36.

52.     In particular, the Company learned for the first time in the spring of 2014 that Edgenuity filed an intent to use application Ser. No. 86165394 for the mark "Edgenuity MyPath" in connection with their new educational software product described herein, which product, in critical respects, is virtually identical to eScholar myTrack ® product. A copy of the application is attached to the Bay Aff. as **Exhibit C**. Bay Aff at para. 37.

53.     As described herein, like the eScholar myTrack ® product, the "MyPath" product's primary function is to -- targeting the same user demographic – use an online education data driven offering by which students, educators and administrators are able to create pathways for success using personalization software attributes on an individualized learning path for students. Bay Aff at para. 38.

54.     It is beyond dispute that the terms "path" and "track" are synonymous, and, when coupled with the prefix "my, "the terms "MyPath" and "myTrack" present a strikingly similar commercial impression. Bay Aff at para. 39.

55.     This clearly creates a "likelihood of confusion" in the education marketplace in that a reasonably prudent purchaser undoubtedly would likely be confused by the use of the same or a similar trademark on a potentially competing product or service. Bay Aff at para. 40.

56.     Moreover, these competing software products will be sold via the same retail outlets and will be marketed to the same consumers including students, educators and administrators. Bay Aff at para. 41.

57.     Understanding the extent of similarity in the respective marks, channels of trade, and same consumer base, Edgenuity's "MyPath" mark inevitably intends to wrongfully trade on the goodwill that the Company has invested and developed in the eScholar myTrack ® product. Bay Aff at para. 42.

58.     In short, it is clear that the general public will believe that Edgenuity's "MyPath" product is somehow affiliated with, or somehow endorsed by eScholar, all of which constitutes trademark infringement and unfair competition actionable under the federal trademark laws. Bay Aff at para. 43.

59.     Over the years, eScholar has advertised and promoted itself through numerous trade publications, trade shows and high profile speaking engagements across the country associated with its product and service offering. The Company has been featured in national media such as the Wall Street Journal, New York Times, New York Daily News, Scholastic Administrator, Yahoo finance among other media outlets. The Company's marks including the eScholar myTrack ® mark are well-known names in the educational marketplace. Bay Aff at para. 44.

60.     Moreover, the Company over the years has actively monitored and policed would be infringers on its suite of marks, and this situation is no exception. It is beyond question that the longstanding and continuous use of eScholar myTrack ® mark has become exclusively associated with the Company, and its products and services in the educational marketplace. Bay Aff at para. 45.

61.     Despite the Company's issuance of two cease and desist demands Weld North and

Edgenuity have categorically refused to cease and desist from further infringement upon our

protected eScholar myTrack ® product. Bay Aff at para. 46.


## COUNT I

### TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT 15 U.S.C. § 1114(1)

62.     Plaintiff incorporates by reference paragraphs 1 through 61 of this Complaint as if all set

forth herein by reference.

63.     Defendant Edgenuity's unauthorized use of the "MyPath" unregistered mark to promote,

market, or sell its products and services constitutes trademark infringement pursuant to 15 U.S.C.

§ 1114(1). Defendant Edgenuity's intentional and willful infringement of the protected eScholar

myTrack ®  registered mark has and continues damage to Plaintiff, and is causing irreparable

harm to Plaintiff for which there is no adequate remedy at law. Plaintiff has been damaged by

these acts in an amount to be proven at trial. Plaintiff is entitled under the Lanham Act to

injunctive and treble damages against Edgenuity.


## COUNT II

### EDGENUITY'S VIOLATIONS UNDER THE LANHAM ACT 15 U.S.C. § 1125(A)

64.     Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as if all set

forth herein by reference.

65.     Defendant Edgenuity's use of the Edgenuity "MyPath" unregistered mark in connection

with its goods and services, in commerce, constitutes Unfair Competition and False Designation

of Origin pursuant to 15 U.S.C.§ 1125(A). Defendant Edgenuity's use of the Edgenuity MyPath

unregistered mark is likely to cause confusion, mistake, or deception among Plaintiff's customers.

66.     Edgenuity is directly liable for these actions. Plaintiff has been damaged by these acts in an amount to be proved at trial. Plaintiff is also entitled under the Lanham Act to injunctive relief and treble damages against Edgenuity.

## COUNT III

## UNFAIR BUSINESS PRACTICE UNDER N.Y. GEN. BUS. LAW § 349

67.     Plaintiff incorporates by reference paragraphs 1 through 66 of this Complaint as if all set forth herein by reference.

68.     Defendant Edgenuity's use of the "MyPath" unregistered mark to promote market, or sell its products and services constitutes a deceptive act or practice in the conduct of Defendant's business, trade or commerce, and in the furnishing of services to customers and therefore a violation of N.Y. Gen. Law. § 349 *et. seq.*

69.     Defendant's materially misleading practice of using the virtually identical unregistered mark "MyPath" is likely to cause customers of Plaintiff to be misled as to the true source, sponsorship, or affiliation of Plaintiff's products and services; specifically its protected eScholar myTrack ® product.

## COUNT IV

## BREACH OF CONTRACT

70.    Plaintiff incorporates by reference paragraphs 1 through 69 of this Complaint as if all set forth herein by reference.

71.    Defendants' violation of the "Confidential Information" provisions under the NDA constitutes a breach of contract.

72.    Plaintiff performed all the obligations pursuant to the terms of the NDA required on its part to be performed.

73.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial of at least $2,000,000.00 in compensatory damages.

**WHERFORE,** Plaintiff respectfully prays that this Court:

1. Issue a preliminary injunction, pending disposition of this action, enjoining and prohibiting Defendant Edgenuity, or its agents, servants, employees, officers, attorneys, successors and assigns from:

(a)    Using the Edgenuity "MyPath" unregistered mark, or any version thereof, in connection with the description, marketing, promotion, advertising, or sale of its products or services.

(b)    Infringing on the eScholar myTrack ® registered mark;

2. Ordering an award of compensatory damages in an amount to be determined at trial;

18

3. Order an award of treble damages as provided by Section 35(a) of the Lanham Act;

4. Order an award of attorney's fees and costs as provided by Section 35(a) of the Lanham Act;

5. Order an award of compensatory damages in the amount of $2,000,000;

6. Order an award of punitive damages in an amount to be determined at trial; and

7. Grant such other and further relief as the Court deems appropriate.


Dated: September 19, 2014
      New York, NY


      Respectfully submitted,

      **MCMENAMIN LAW GROUP**
      /S/ Paul R. McMenamin

      Paul R. McMenamin (PM0180)
      460 Park Avenue South, 12th Floor
      New York, NY 10016
      Tel: (646) 670-7370
      Cell: (917) 312-8334
      Email: paul@mcmenaminlawgroup.com